IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.                                    CRIMINAL CAUSE NO. 3:14cr111HTW-FKB

CECIL MCCRORY

## MOTION TO WITHDRAW GUILTY PLEA

**COMES NOW,** the Defendant, Mr. Cecil McCrory, by and through his undersigned counsel of record, and files pursuant to Fed. R. Crim. P. 11(d)(2)(B) this, his Motion to Withdraw Guilty Plea. In support of the instant Motion, Mr. McCrory will demonstrate to this Court that there are fair and just reasons for his request for permission to withdraw his previously-entered guilty plea. Fed. R. Crim. P. 11(d)(2)(B). The most significant fair and just reason for withdrawal is that McCrory was not adequately represented by counsel prior to, and during, his plea of guilty. Because there exist fair and just reasons for withdrawal of his guilty plea and because he asserts he is innocent of the charges to which he previously pleaded guilty (Exhibit "A"), Mr. McCrory begs this Court for an opportunity to have his case tried before a jury of his peers. As such, Mr. McCrory respectfully requests this Court permit him to withdraw his guilty plea and permit him to have a trial on the merits.

**I. STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY**

On August 5, 2014, the Government filed a forty-nine count joint indictment against Mr. McCrory and his co-defendant, Christopher Epps ("Epps"). [Ct. Doc. Nos. 1-4]. Mr. McCrory was charged in fifteen of those forty-nine counts. [Ct. Doc. No. 3; November 6, 2014 Minute Entry]. On November 6, 2014, Mr. McCrory and his co-

1

defendant were arraigned on their respective charges. [*See* November 6, 2014 Minute Entry]. The Government did not make Mr. McCrory's discovery materials available to him, however, until December 8, 2014. Exhibit "B". On that date, the Government provided Mr. McCrory and his prior attorney approximately seventy compact discs and DVDs of discovery materials consisting of audio and video recordings, FBI 302's, hundreds of miscellaneous documents, and thousands of pages of telephone and financial institution records. Ct. Doc. Nos. 26 and 63]. On February 25, 2015, only eighty days after having received the aforementioned seventy discs of discovery materials, Mr. McCrory pleaded guilty to Count 23 of the Indictment, which charged Mr. McCrory with having committed a conspiracy to commit money laundering in violation of Title 18 U.S.C. § 1956(h). [*See* February 25, 2015 Minute Entry]. That same day, Epps pleaded guilty to two counts of the Indictment, the above-described Count 23 and Count 44, a charge of filing a false and fraudulent tax return in violation of Title 26 U.S.C. § 7206(2). [*See* February 25, 2015 Minute Entry].

The lawyer who represented Mr. McCrory during the investigative and plea stages of this case did not closely assist Mr. McCrory in a number of ways. First, Mr. McCrory's first lawyer failed to protect his interests by granting the FBI unrestrained access to Mr. McCrory in that the prior lawyer repeatedly permitted law enforcement agents to converse with Mr. McCrory outside that lawyer's presence. Next, the prior attorney failed to negotiate the outcome of Mr. McCrory's case before letting him engage in extensive cooperation with the Government. That attorney also advised his client to plead guilty without having reviewed the enormous amount of discovery in this case. Lastly, that attorney allowed Attorney Mike Hurst, the then-Assistant United States

Attorney ("AUSA") who was assigned to handle this case, to put unfair and undue pressure on Mr. McCrory to get him to plead guilty. (Exhibit "C").

On January 3, 2016, the undersigned counsel entered his appearance as counsel for Mr. McCrory in substitution of Mr. McCrory's previous attorney. [Ct. Doc. No. 62]. From that point until now, the Government has provided the defense thousands of additional pages of discovery materials which relate to Mr. McCrory's liability, or lack thereof, for the criminal charges in this case and which would greatly impact sentencing in this case. In fact, many of those belatedly-produced documents have exculpatory evidentiary value to Mr. McCrory. As of the date of this filing, there are still more voluminous records that the Government has not provided the defense, including materials from four companies who have provided the Government information that the Government has said it wants to try to use against Mr. McCrory. The Government has not only argued against Mr. McCrory's requests for disclosure of those documents, but it is asking the Court to limit the defense's full use of those documents.

Mr. McCrory now seeks to withdraw his plea. Each of the factors this Court must consider in deciding whether to grant the defendant the relief he seeks weighs in Mr. McCrory's favor. Moreover, no one would be prejudiced or substantially inconvenienced if this Court were to grant Mr. McCrory the opportunity to have a trial on the merits of this case.

## II.  LEGAL ANALYSIS

### A.  Fed. R. Crim. P. 11(d)(2)(B) Motion Standard

Fed. R. Crim. P. 11(d)(2)(B) provides, in pertinent part, that a defendant "may withdraw a plea of guilty […] after the court accepts the plea, but before it imposes

sentence if the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Even though no defendant has an absolute right to withdraw a guilty plea, Rule 11's "'fair and just' standard is generous and must be applied liberally." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008). Acceptance of a motion to withdraw a guilty plea is within the sound discretion of this Court. *See United States v. Davila*, 698 F.2d 715, 721 (5th Cir. 1983).

In determining whether to permit Mr. McCrory to withdraw his guilty plea, this Court should consider the following seven factors, if applicable:

> (1) whether the defendant has asserted his innocence; (2) whether allowing the defendant to withdraw his guilty plea would prejudice the Government; (3) whether the defendant has delayed in filing the withdrawal motion; (4) whether the withdrawal would substantially inconvenience the Court; (5) whether adequate assistance of counsel was available; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984). This Court is not required, however, to make findings as to each of the *Carr* factors, and no one factor, alone, is dispositive of the issue. *See United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001). Courts must make their Rule 11(d)(2)(B) decisions based on the totality of the circumstances. *Id*. Moreover, as the *Davila* Court stated, "the circumstances alleged as grounds for withdrawal are numerous, and [a trial court's] determination of whether permitting such withdrawal would be 'fair and just' depends on the particular facts of each case." *Davila*, 698 F.2d at 721. This case presents an unusual set of circumstances that warrant Mr. McCrory's being allowed to withdraw his plea.

4

### B. The *Carr* Factors Weigh in Favor of Permitting Withdrawal of Mr. McCrory's Guilty Plea

The *Carr* factors weigh in favor of permitting Mr. McCrory to withdraw his previously-entered guilty plea. When the Court analyzes each factor and looks at them as a whole, those factors demonstrate that there exists a fair and just reason for Mr. McCrory to be allowed to proceed to trial as he requests. The defense will address each *Carr* factor that this Court should consider based on the particular facts of this case, in turn, below.

#### i. *Mr. McCrory Asserts his Innocence as to Count 23 of the Indictment*

Mr. McCrory asserts in the Affidavit of Innocence [Exhibit "A"] attached to this filing that he is legally and factually innocent of the money laundering conspiracy charge alleged in Count 23 of the Indictment. As the Affidavit of Innocence states, Mr. McCrory did not knowingly or willfully agree or conspire with his co-defendant, Christopher Epps, to commit laundering. As such, he is not guilty of violating Title 18 U.S.C. § 1956(h). In addition, Mr. McCrory fully understands the risks inherent in his decision to withdraw his guilty plea. He is aware that if this Court were to grant him the relief he seeks that a jury could possibly convict him and that if he were to be convicted, he would lose any benefit he has been offered in the plea agreement that he entered into with the Government. Mr. McCrory is fully aware of the nature and circumstances of his case, and he understands the differences in potential sentences he could possibly receive in the current posture of this case as compared to what he might receive should he not prevail at trial. He maintains, though, that despite those risks he wants a jury of his peers to hear his version of the events that gave rise to this case.

### ii. Adequate Assistance of Counsel Was Not Available to Mr. McCrory Prior To, and During, His Guilty Plea

Mr. McCrory's prior counsel is a fine gentleman and an outstanding, highly reputable lawyer in his usual areas of practice. In the instant case, however, that attorney did not provide Mr. McCrory adequate assistance of counsel in several respects. This is one of the most extensive, complex cases the Southern District of Mississippi has prosecuted in many years. Defending so-called federal white-collar criminal cases of this magnitude is an endeavor that usually requires delving into thousands of pages of financial records to determine whether those records verify or refute what the Government claims those cases are about. Such records also help attorneys and their clients ascertain what type of sentencing exposure a defendant would face under the U.S. Sentencing Guidelines. That sort of careful review was not done in this instance. First, the Government, even as of this date, has never turned over all the documents that are necessary for Mr. McCrory to prepare his defense. Thus, by definition, this case could not have been competely analyzed by the defense prior to the subject guilty plea. Next, considering the sheer volume of discovery involved in this prosecution, it is highly improbable that Mr. McCrory's prior lawyer had time to analyze those materials between the time he received them and the time Mr. McCrory entered his plea. In addition to his failing to review and discuss with Mr. McCrory all the discovery materials that were made available to him, the defendant's prior lawyer did not provide Mr. McCrory with proper assistance by putting proper safeguards in place to protect Mr. McCrory against his adversary, the federal Government. As a result, Mr. McCrory was deprived of the close assistance of counsel that is required under the circumstances.

As this Court is aware, the analysis of whether adequate assistance of counsel was available to a defendant for the purposes of a motion under Rule 11(d)(2)(B) is not the same sort of inquiry undertaken when a court decides whether a defendant received constitutionally ineffective assistance of counsel. *See United States v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009). Under Rule 11(d)(2)(B), the issue is whether the defendant received "close assistance of counsel," while ineffective assistance of counsel is a basis by which a court would invalidate a conviction under the Sixth Amendment to the Constitution. *Id*. For the purposes of this motion, therefore, Mr. McCrory does not attempt to make a showing of Sixth Amendment ineffectiveness of counsel. Although Mr. McCrory's prior lawyer arguably provided him inadequate representation in the constitutional sense, for the purposes of this Motion, he seeks only to show that he did not receive "close assistance of counsel", as that term is used in the Rule 11(d)(2)(B) context, prior to and during his guilty plea.

### a. Mr. McCrory Pleaded Guilty Without his Prior Counsel Having Reviewed and Discussed with him the Discovery Materials in this Case

Mr. McCrory's former counsel advised him to plead guilty without having carefully analyzed the voluminous discovery materials in a meaningful way. Again, in early December 2014, the Government turned over to the defense approximately seventy discs of discovery materials, many of which contained dense and complicated financial records. About eighty days after receiving those records, Mr. McCrory pleaded guilty to Count 23 of the Indictment. Mr. McCrory and his then-counsel did not review those materials thoroughly during that time period. In graciously agreeing with the undersigned's first request for a continuance upon entering his appearance in this case, the Government's current lead counsel informed this Court during a January 26, 2016

hearing that it would take about six months for the undersigned to conduct a meaningful review of the seventy discs of discovery materials that had been turned over to him. Nevertheless, the Government's former lead counsel in this case, Attorney Hurst, demanded a plea of guilty from Mr. McCrory and his former lawyer after only two months of their being in possession of those same materials. That was demonstrably inadequate time to have reviewed that set of discovery, the only set of discovery that was provided to Mr. McCrory prior to his guilty plea.

More than one year after Mr. McCrory's guilty plea and after he had changed counsel, the Government informed the Court during an April 11, 2016 hearing that it had "newly discovered" additional contracts and financial records that it claimed made this an $800 Million case rather than the $300 Million case it originally contended it was. If nothing else, the Government's revelation of those purported half-a-billion dollars in new records demonstrates that Mr. McCrory's former attorney counseled him to plead guilty without the benefit of seeing those critical records that the Government claims make Mr. McCrory susceptible to additional criminal liability. Those materials include thousands of pages of documents, and the Government has provided a portion of them to the defense over the last few months. Nevertheless, even though the Government wants to use those new documents against Mr. McCrory, it has argued that many of those materials and their backup documents are not discoverable to the defense. To that end, the Government has taken the unprecedented step of advocating for and on behalf of the companies that produced those materials in an effort to persuade this Court that it should order those still undisclosed documents to be produced under a protective order, if produced at all. In sum, if the Government failed to "find", much less produce to Mr.

McCrory's former attorney, records that multiplied Mr. McCrory's supposed loss amount by two and one-half times, then Mr. McCrory undoubtedly could not have had the close assistance of counsel necessary to be well-advised about his guilty plea.

### b.  Mr. McCrory's Prior Counsel Provided him Insufficiently Close Assistance of Counsel When that Counsel Granted the Government Unfettered Access to Mr. McCrory Prior to his Guilty Plea

Mr. McCrory did not have the required close assistance of counsel when he was talking to and working with the Government prior to the entry of his guilty plea and his change in counsel.  After he hired his first lawyer, Mr. McCrory cooperated with the FBI and other Government agents and engaged in a number of debriefing conversations with federal law enforcement personnel.  Those interrogations occurred sometimes with his lawyer present and at other times without his lawyer being present.  The fact that Mr. McCrory was permitted by his then-lawyer to engage in conversations with FBI agents outside his lawyer' presence is beyond absurd, particularly in the absence of some sort of immunity or non-prosecution agreement.  On this point, the defense begs the Court to consider a comparison.  This prosecution is a criminal case where statements made by accused persons or witnesses potentially carry grave pecuniary and, more importantly, penal consequences.  If any civil lawyer were to permit his or her client to participate in a civil deposition in which criminal liability is not in issue, even with the presence of a neutral, certified court reporter tasked with recording every word of that questioning, without that lawyer being present, any reasonable person would consider that a travesty. Here, Mr. McCrory's first lawyer allowed FBI agents directed by then-AUSA Mike Hurst, who was at that time overly driven by his then-upcoming leap into electoral politics, to interview Mr. McCrory repeatedly in a significant criminal case without that

lawyer being present. In doing so, that attorney relied on those FBI agents, rather than a court reporter or without demanding that those sessions be electronically recorded, to make accurate notes and truthful reports of those conversations. In that sense, Mr. McCrory's prior attorney offered him none of the protection of his interests in the way that one would expect from a criminal defense attorney in the face of accusations of criminal activity. Throughout his nearly year-long cooperation with the Government, Mr. McCrory's then-counsel permitted him to engage in this extensive cooperation without the benefit of a proffer or plea agreement, a negotiated set of outcomes for Mr. McCrory, or a clear understanding of the Government's position regarding Mr. McCrory's relative level of culpability. In a case of this magnitude, that sort of lack of protection of a client should not have happened with proper close assistance of counsel.

Although the Government made many contradictory representations to Mr. McCrory about whether he would be charged in this case and what offer the Government would make in exchange of the extreme level of cooperation he undertook, his lawyer allowed him to provide records to the Government; have repeated talks by himself with Government agents; and wear wires and record consensually-monitored conversations with other Government targets without a written commitment about what the Government was offering in exchange for that cooperation. In other words, Mr. McCrory's lawyer permitted his client to engage in dangerous and extraordinary levels of cooperation without first knowing what he would get in exchange for that cooperation. In fact, the plea agreement in this case is without mention of any specific sentence the Government would recommend in exchange for Mr. McCrory's cooperation, even though the Government, prior to Attorney Hurst's departure from the Government, made such

representations.  Had Mr. McCrory received close assistance of counsel, the representations the Government made to him about whether he would be prosecuted and what plea recommendations the Government would make to the Court in the event that he had to enter a plea of guilty would have been committed to writing and included in the plea agreement and plea supplement that were filed with this Court.  Also that attorney would have, and indeed should have, insured that the promises that had been made to his client were included in the Fed. R. Crim. P. 11 colloquy conducted during the plea hearing.

### c. Mr. McCrory's Prior Counsel Allowed the Government to Put Undue and Untoward Pressure on his Client to Get Him to Plead Guilty

Mr. McCrory concedes that the law permits prosecutors to drive hard bargains to defendants in criminal cases.  Mr. McCrory does not complain in this filing, though, of that sort of legally-permissible, tough, negotiation tactic on the part of the Government.  Here, he argues that Attorney Hurst's actions on behalf of the Government in exacting a plea out of Mr. McCrory far exceed anything courts, defendants, or the public should reasonably expect out of the Department of Justice.  That is, Attorney Hurst improperly suggested to Mr. McCrory that this Court—not Attorney Hurst himself—had to have the plea on February 25, 2015, a date that was conveniently less than forty-eight hours before the statutory deadline requiring Attorney Hurst to file for, and publicly announce, his candidacy to run for Attorney General of the State of Mississippi.  Attorney Hurst rushed Mr. McCrory and coerced the subject guilty plea out of him by misleading him and his then-lawyer into believing that the only time this Court would take a plea from him was on February 25, 2015.  Simply put, Attorney Hurst hoodwinked Mr. McCrory into believing that this Court was requiring him to plead to one of the fifteen counts the

Indictment accused him of committing on February 25, 2015, or forfeit all of his extensive cooperation and go to trial on all the counts with which he was charged in the Indictment. That put undue pressure on Mr. McCrory that made him capitulate and plead guilty to a crime he avers he did not commit.

Again, the timing of the plea and what Attorney Hurst did to arrange that plea shows that politics, rather than justice, dictated certain aspects of this case. On February 27, 2015, less than forty-eight hours after the subject guilty pleas of Mr. McCrory and his co-defendant, Attorney Mike Hurst, the then-Assistant United States Attorney who was assigned to handle this case, resigned from the United States Attorney's Office for the Southern District of Mississippi and that same day filed qualifying papers to run for Attorney General of the State of Mississippi.  February 27, 2015, was the qualifying deadline for that race.  That is, if Attorney Hurst had not submitted his registration paperwork by that date, he would have been barred from running for that office.

Attorney Hurst's timing in handling the guilty plea and then resigning to seek elected office is not the only issue.  First, prior to Mr. McCrory's guilty plea, Attorney Hurst told the defense that either he enter a plea of guilty no later than February 25, 2015, and accept the Government's proposed plea agreement, or the Government would insist on going to trial and Mr. McCrory would, therefore, not get credit for all the extensive cooperation and assistance he had provided the Government.  Second, and worse, Attorney Hurst applied undue pressure on Mr. McCrory and his prior attorney to get him to plead guilty on February 25, 2016 by wrongly telling them that this Court could only do a plea for McCrory on that date and time.  That is, in an effort to bolster what unbeknownst to everyone else in and around this prosecution was to be his upcoming

12

political campaign, Attorney Hurst told Mr. McCrory and his then-counsel that the only time this Court could conduct Mr. McCrory's guilty plea was on February 25, 2015. That, however, was not true. Thus, the Government, namely Attorney Mike Hurst, improperly handled this case in a manner that was motivated by politics and the need to generate fodder for his then-upcoming election campaign. Even though he knew his statements were not entirely accurate, Attorney Hurst wrongfully leveraged the power and authority of this Court by telling Mr. McCrory that this Court could only do his plea on February 25, 2015, a day and time that was calculated to propel Attorney Hurst' upcoming "public corruption" campaign platform that he would tout to try to win his Attorney General's race. Attorney Hurst's manipulation of the rushed deadlines in this case as a political play, along with Mr. McCrory's claim of innocence of the charge to which he pleaded guilty, is a fair and just reason for permitting Mr. McCrory to withdraw his plea to Count 23 of the Indictment and go to trial. Lastly, as Mr. McCrory's son, Attorney Josh McCrory, testified to this Court in a July 18, 2016 hearing, the Government represented to the defense that if Attorney Josh McCrory, who the Government had no reason to believe had engaged in any criminal activity, exercised his legal right to contest the forfeiture of his ownership interest in the property the Government was then seeking to forfeit as part of this case, then the Government would, in a word, treat his father more harshly, despite Mr. Cecil McCrory's extensive cooperation with the Government. Because of the Government's aforementioned undue pressure and coercion, Attorney Josh McCrory declined to pursue his lawful claims to his interests in the vast sums of property the Government sought to forfeit in this case. That same sort of undue influence and untoward pressure was part of the reason Mr. Cecil

McCrory felt compelled to plead guilty to County 23 of the Indictment.  To be sure, Attorney Hurst's misleading comment about the Court are tied to Mr. McCrory's lack of close assistance of counsel.  His then-attorney in this case had options available to him that he did not exercise to protect his client from the undue weight of the Government's misleading comments about the Court.

### *iii. Mr. McCrory's Plea Was Not Knowing and Voluntary*

Mr. McCrory's guilty plea was facially valid; however, that plea was not knowing and voluntary because that plea was, in part, induced by undue coercion and threats by the Government.  A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the prosecutor or his own counsel will usually stand, unless that plea is induced by threats, misrepresentation, or by promises that are by their nature improper. *Brady v. United States*, 397 U.S. 742, 755 (1970); *see also Mabry v. Johnson*, 467 U.S. 504, 509-10 (1984) (explaining that where the plea is not the product of "governmental deception" or "unfulfilled promise," the voluntariness and intelligence requirements are satisfied).  At the time of his guilty plea, Mr. McCrory was not aware of the actual value of any commitments made to him by the prosecutor or by his own counsel.  Without question, the Government had made Mr. McCrory unfulfilled promises when it induced him to engage in extreme levels of cooperation in exchange for promises to recommend that the Court impose a specified sentence of imprisonment.  When Attorney Hurst decided that the time had come for him to demand a rushed plea of guilty from Mr. McCrory, he refused to include in the plea agreement he gave to Mr. McCrory any of the promises that had been made to Mr. McCrory in order to get him to cooperate with the Government in the first place.  This

Court has seen the sealed plea agreement and plea supplement in this case, and without disclosing the contents of those documents, the Court can see that it makes no recommendation for Mr. McCrory's sentencing other than what is typically prescribed for cooperating defendants who perform nowhere near the amount of work Mr. McCrory performed on behalf of the Government. Furthermore, the Court will recall that in various hearings this year, the defense has referenced the fact that the Government made Mr. McCrory promises that were unfulfilled. The Government, in turn, never denied that it had made promises to Mr. McCrory prior to the entry of his plea; however, the Government has never even attempted to explain why those recommendations or promises are not prescribed in the plea agreement that was filed with this Court.

### iv. Mr. McCrory's Delay in Requesting Withdrawal is Reasonable and Does Not Suggest a Tactical Decision

The period of delay between Mr. McCrory's guilty plea and the filing of this motion is excusable and was not delayed for tactical reasons. The defense, without being prompted by the Court or the prosecution, announced to the Court that it intended to file a motion asking this Court to permit the withdrawal of Mr. McCrory's guilty plea after the undersigned had an opportunity to review the discovery in this case and researched the issues involved. Thus, the Government knew about, and was not prejudiced by, the filing of this request. *See McTiernan*, 546 F.3d at 1169 ("[D]elay itself does not make an otherwise valid reason for withdrawal any less 'fair' or 'just,' especially where there is nothing in the record to indicate that the 'reasons for withdrawal were not bona fide, or that the [G]overnment suffered great prejudice as a result of the delay") (quoting *United States v. Garcia,* 401 F.3d 1008, 1013 (9th Cir. 2005)). This case is one of the largest, most complex criminal cases prosecuted in this district in many years. The

Government's initial disclosure of discovery materials included the aforementioned seventy discs of financial and other records, and since April 2016, the Government has produced to the defense in a string of disclosures many more thousands of pages of discovery, mainly financial records, that it claims increase the loss amount in this case by about $500 Million dollars. It has taken until now to review those materials fully. Importantly, the Government admits that there exist many more documents that have yet to be disclosed to Mr. McCrory. At the latest hearing before this Court just a few weeks ago, however, the Government informed the defense and the Court that it intended to go forward with this case without regard to whether Mr. McCrory has an opportunity to review the discovery that it has not yet produced to the defense. In addition to those reasons, the delay in filing this case is, in part, based on the schedule and court docket of the undersigned attorney. This Court has referenced the undersigned as a competent attorney in previous opinions and in-court declarations. Moreover, although Mr. McCrory's current counsel has worked diligently on this case, the undersigned maintains a busy docket with a large number of active federal and state criminal and civil cases in the State of Mississippi and elsewhere that have prevented the undersigned from devoting all his attention to the review of the aforementioned discovery and the researching and filing of this motion. *Garcia*, 401 F.3d at 1013 ("A defendant's delay may be attributable to factors – such as continuances of sentencing […] or even practical matters such as the amount of time it takes a busy attorney competently to research and prepare a motion to withdraw a plea – that are entirely unrelated to the legitimacy or the sincerity of the defendant's reasons for wishing to withdraw his plea"). Those legitimate reasons for the

16

delay in filing the instant motion do not suggest any illegitimate motive in the timing of the motion.

### *v. The Government Would Not Prejudice the Government if this Court Were to Set Aside Mr. McCrory's Guilty Plea*

As was stated in recent hearings before this Court, the Government is still actively investigating the crimes alleged in the Indictment in this case and in related cases. As mentioned previously, the Government astonishingly told this Court in formal hearings earlier this year that it had discovered post-conviction a vast number of documents and evidence that were supposedly unknown to it prior to Mr. McCrory's guilty plea and were, thus, never disclosed to the defense until nearly a year after that plea. Those "newly discovered" documents, claimed the Government, transformed this case from what it had been claiming was a $300 Million case into an $800 Million case. Ever since that shocking in-court revelation, the Government has treated its "$500 Million mistake" as though it were a mere rounding error. The Government surely would not be prejudiced by being put to its burden of proving such a highly-elevated claim. When the Government indicted this case, it knew that there was the possibility that any or all of the defendants it charged could exercise their right to put the Government to its proof at trial. In addition, prior to the entry of Mr. McCrory's guilty plea, no substantive motions were filed by the Government or the defense, so the Government did not spend considerable costs in terms of financial outlays or human capital to advance or defend against any such motions. It also bears noting that none of the witnesses the Government would necessarily call at trial have died or otherwise become incapable of testifying on behalf of the Government. Furthermore, the Government has amassed enough documentary

17

evidence to refresh the recollection of any witnesses whose memory might not be as fresh about the facts of this case as when the Indictment was issued.

**WHEREFORE PREMISES CONSIDERED**, Mr. Cecil McCrory respectfully requests this Court enter an order permitting him to withdraw his guilty plea and allowing him to proceed to trial on the merits of this case.

**RESPECTFULLY SUBMITTED**, on this, the 8th day of December, 2016.

CECIL McCRORY

 /s/ E. Carlos Tanner, III
E. Carlos Tanner, III, Esq. (MS Bar No. 102713)
TANNER & ASSOCIATES, LLC
Post Office Box 3709
Jackson, Mississippi 39207
carlos.tanner@thetannerlawfirm.com
601.460.1745 (telephone)
662.796.3509 (facsimile)

**CERTIFICATE OF SERVICE**

I, E. Carlos Tanner, III, do hereby certify that on this date, December 8, 2016, I have electronically filed the foregoing Motion to Withdraw Guilty Plea with the Clerk of Court for the United States District Court for the Southern District of Mississippi using the ECF system, which caused notification of that filing to be sent electronically to all counsel of record in this cause.

ON THIS, the 8th day of December, 2016.

/s/ E. Carlos Tanner, III
E. Carlos Tanner, III, Esq. (MS Bar No. 102713)
TANNER & ASSOCIATES, LLC
Post Office Box 3709
Jackson, Mississippi 39207
carlos.tanner@thetannerlawfirm.com
601.460.1745 (telephone)
662.796.3509 (facsimile)

**CERTIFICATE OF CONFERENCE**

I, E. Carlos Tanner, III, do hereby certify that, I have informed Counsel for the Government in this cause that I would be filing the instant Motion, and that opposing counsel has informed the undersigned that the Government opposes the instant filing and intends to respond in opposition to it.

ON THIS, the 8th day of December, 2016.

>/s/ E. Carlos Tanner, III
>E. Carlos Tanner, III, Esq. (MS Bar No. 102713)
>TANNER & ASSOCIATES, LLC
>Post Office Box 3709
>Jackson, Mississippi 39207
>carlos.tanner@thetannerlawfirm.com
>601.460.1745 (telephone)
>662.796.3509 (facsimile)